UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYRIAN Y. MCINTOSH,

Plaintiff,

v.

WELLS FARGO BANK, N.A., et al.,

Defendants.

Case No. 20-cv-01649-RS

**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**

## I. INTRODUCTION

Plaintiff Myrian McIntosh brings this action against defendants Wells Fargo Bank, N.A., U.S. Bank, N.A., and Catamount Properties, LLC, regarding a loan secured by a mortgage on the property located at 102 Ford Drive, American Canyon, CA ("the Property"). McIntosh alleges defendants breached a class action settlement, wherein she was a class member, breached her Deed of Trust, and violated California's Homeowner Bill of Rights ("HBOR")—and thus wrongfully foreclosed upon the Property. Defendants now move to dismiss under Rule 12(b)(6). Pursuant to Civil Local Rule 7-1(b), as well as a prior order, *see* ECF No. 48, the motions are suitable for disposition without oral argument. For the reasons set forth below, the motions are granted, with McIntosh afforded leave to amend.

## II. BACKGROUND[1]

---

[1] The factual background is based on the allegations in the complaint, which must be taken as true for purposes of this motion, as well as documents which may be incorporated by reference or of which judicial notice may be taken. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    In June 2006, McIntosh obtained a $680,000 Pick-a-Payment refinance loan ("the Loan")

2  from World Savings Bank, FSB, secured by a Deed of Trust recorded against the Property. A

3  Pick-a-Payment loan permits the borrower to choose, for a limited period, to pay less than the

4  interest due on the loan with each payment. *See* Agreement and Stipulation of Settlement of Class

5  Action, *In re Wachovia Corp.*, ECF No. 18-2 ("Settlement Agreement"), at 22. The unpaid interest

6  is then added to the loan's balance, increasing the outstanding principal balance. *Id.* at 23.

7    Between 2007 and 2009, World Savings Bank changed its name to Wachovia Mortgage

8  FSB, and Wachovia merged into Wells Fargo. In 2009, McIntosh obtained a modification of the

9  Loan from Wells Fargo. The modification reduced her secured debt and set a new payment

10  schedule: for five years, McIntosh would make interest-only payments on the Loan, with rates

11  from 4.25% to 6.125%; after that she would pay down the principal and interest, which would

12  accrue at 6.5%. McIntosh alleges these terms were "not sustainable." *See* First Amended

13  Complaint ("FAC"), ECF No. 18, at 4.

14    Also in early 2009, a class action lawsuit was brought against Wells Fargo in this District,

15  alleging predatory lending via Pick-a-Payment loans. *See In re Wachovia Corp.*, No. 09-md-02015

16  (N.D. Cal. filed Feb. 13, 2009). The case settled in December 2010. Settlement Class Members

17  were divided into A, B, and C subclasses. Class A members were those who had obtained a Pick-

18  a-Payment mortgage loan from World Savings Bank between August 1, 2003 and December 31,

19  2008, but no longer had the loan because they had already sold the subject property, refinanced,

20  paid off the loan, or "obtained a modification that converted the loan from a Pick-a-Payment

21  Mortgage Loan." *See* Settlement Agreement at 30. Class B and C members were those who still

22  had Pick-a-Payment mortgage loans; Class B members were not in default at the time of the

23  Settlement Agreement, while Class C members were. *See id.* at 30–31.

24    The Settlement Agreement further provided that from December 18, 2010 to June 30,

25  2013, Wells Fargo would "make loan modifications available for Settlement Class B Members in

26  Imminent Default, who later become in Imminent Default, or who later become in Default, and

27  Settlement Class C Members." *Id.* at 35. These modifications would be made under the federal

28

1  Home Affordable Modification Program ("HAMP") for eligible class members. *Id.* After June 30,

2  2013, Wells Fargo would "continue to evaluate" class members who came close to defaulting "for

3  potential loan workout solutions that are commercially reasonable and are designed to help avoid

4  foreclosure." *Id.* at 42. However, the Agreement stated, "Settlement Class Members who have

5  received earlier loan modifications not pursuant to this Agreement will not be eligible to be

6  considered for new loan modifications under this Agreement." *Id.* at 46.

7       In 2011, McIntosh obtained a second modification of the Loan under the HAMP. This

8  modification again reduced the principal balance, deferred a portion of the principal balance such

9  that interest would not accrue, and fixed the interest rate at 3.5% for five years and 4% after that.

10  McIntosh made her payments until August 2015, when she missed one. She missed another

11  payment in October 2015. In May 2016, she became unable to pay her mortgage altogether. In

12  November 2016, as per the terms of the second modification, her interest rate increased to 4%.

13       Wells Fargo recorded a Notice of Default on May 3, 2017 with the Napa County Recorder.

14  Alongside the notice, Wells Fargo filed a Notice of Compliance with California Civil Code §

15  2923.55(c), signed by its Vice President of Loan Documentation, stating "[t]he mortgage servicer

16  has contacted the borrower pursuant to California Civil Code § 2923.55(b)(2) to 'assess the

17  borrower's financial situation and explore options for the borrower to avoid foreclosure.' Thirty

18  days or more have passed since the initial contact was made." *See* Notice of Default and Election

19  to Sell Under Deed of Trust, ECF No. 22, at 31.

20       In August 2018, Wells Fargo assigned its beneficial interest under the deed of trust to U.S.

21  Bank and recorded an assignment with the Napa County Recorder. U.S. Bank recorded a notice of

22  trustee's sale on January 23, 2019 with the county. The Property was sold on August 2, 2019 to

23  Catamount, which recorded a trustee's deed upon sale. In 2018 and 2019, McIntosh filed for

24  bankruptcy several times. Furthermore, in 2019, she filed an adversary action against defendants

25  in bankruptcy court. In January 2020, the bankruptcy court issued an order dismissing the

26  adversary action under Rule 12(b)(6), in response to a motion by U.S. Bank and Catamount. In

27  March 2020, the court denied a motion to reconsider.

28

The next day, McIntosh filed the present action. She asserts four causes of action against Wells Fargo and U.S. Bank: (1) breach of contract, i.e., the Settlement Agreement, and promissory estoppel; (2) breach of the deed of trust and promissory estoppel; (3) breach of the covenant of good faith and fair dealing; and (4) violation of the HBOR. She asserts two additional causes of action against all defendants, (5) wrongful foreclosure and (6) cancellation of instruments, and a final cause of action against Catamount alone: (7) quiet title. She requests cancellation of the foreclosure sale and damages pursuant to California Civil Code § 2924.12.

### III.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### IV.  DISCUSSION

#### A.  Evidence Outside the Pleadings

Generally, courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "There are two exceptions to this rule." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

988, 998 (9th Cir. 2018). First, "[j]udicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (citing Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (citing Fed. R. Evid. 201(b)(1)–(2)). "Accordingly, a court may take judicial notice of matters of public record …[b]ut a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (internal citation and quotations omitted). Second, a defendant may seek to incorporate by reference a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Id.* at 1002. Incorporation by reference prevents plaintiffs from selecting only portions of documents that support their claims. *Id.*

Defendants have submitted the following documents with their motions to dismiss:

- Several documents filed with the Department of Treasury and Federal Deposit Insurance Corporation, evincing World Savings Bank's renaming as Wachovia Mortgage, and Wachovia's merger into Wells Fargo (Wells Fargo Request for Judicial Notice ("WF RJN"), ECF No. 22, Ex. A–E);

- 2009 Loan Modification Agreement between Wells Fargo and McIntosh (WF RJN, Ex. F);

- 2011 Loan Modification Agreement between Wells Fargo and McIntosh (WF RJN, Ex. G);

- Notice of Substitution of Trustee, recorded in April 2017 (Catamount Request for Judicial Notice ("Catamount RJN"), ECF No. 24, Ex. A);

- Notice of Default and Election to Sell Under Deed of Trust, recorded by Wells Fargo in May 2017 (WF RJN, Ex. H; U.S. Bank Request for Judicial Notice ("USB RJN"), ECF No. 31, Ex. A; Catamount RJN, Ex. B);

- Assignment of Deed of Trust of the Property from Wells Fargo to U.S. Bank, recorded in August 2018 (WF RJN, Ex. I; USB RJN, Ex. B; Catamount RJN, Ex. C);

- Bankruptcy Petition by McIntosh, filed in January 2018 (WF RJN, Ex. J);

- Complaint by McIntosh in Adversary Action, filed September 2019 (USB RJN, Ex. E);

- Notice of Trustee's Sale of the Property, recorded in January 2019 (WF RJN, Ex. K; USB RJN, Ex. C; Catamount RJN, Ex. D);

- Trustee's Deed Upon Sale of the Property, recorded in August 2019 (WF RJN, Ex. L; USB RJN, Ex. D; Catamount RJN, Ex. E);

- Order Granting Motions to Dismiss Adversary Action, January 2020 (USB RJN, Ex. F);

- Order Denying Motion to Reconsider Order Granting Motions to Dismiss Adversary Action, March 2020 (WF RJN, Ex. M).

McIntosh registers objections to several of the requested documents. First, she objects to the consideration of the modification agreements. She states the 2009 modification is "arguably" not mentioned in the FAC, and the 2011 modification is only mentioned once, and thus that the modifications are not discussed "extensively" enough to be incorporated. However, the FAC clearly mentions both modifications. *See* FAC at 4–5. The crux of McIntosh's complaint is that defendants had a legal obligation to offer further modifications of the Loan, i.e., the modifications form the basis for the complaint. Notably, McIntosh does not contest the authenticity or accuracy of the modification documents, or that the modifications they reflect occurred on the terms identified. Incorporation of the modification agreements is thus appropriate.

Second, McIntosh objects to the admission of the notice of substitution of trustee, notice of default, assignment of deed of trust, notice of trustee's sale, and trustee's deed upon sale, because she disputes the validity of the transactions these exhibits evince. Each of these documents was recorded in the official records of Napa County. They are thus each matters of public record whose authenticity can accurately and readily be determined from authoritative sources. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 1995). Furthermore, the facts contained within the documents are "verifiable with certainty, and of the same type as other governmental documents which courts have judicially noticed." *Khoja*, 899 F.3d at 1001 (internal citation omitted). With one exception,[2] McIntosh does not dispute the events documented by the exhibits—for example,

---

[2] The single exception is a Declaration attached to the Notice of Default, in which a Wells Fargo Vice President states the servicer of the Loan reached out to McIntosh to discuss alternatives to

United States District Court
Northern District of California

that she defaulted on the Loan, or that the Property was sold—but rather that they should not have been allowed to occur. These grievances are substantive arguments, discussed below, rather than true evidentiary objections. Judicial notice of each of these documents is appropriate.

As to the remaining documents, McIntosh does not dispute their authenticity. They are either court records or record of agencies, and thus matters of public record subject to judicial notice. *See Shaw*, 56 F.3d at 1129. Each request is thus granted. All the exhibits submitted by the defendants are appropriately considered for the purposes of deciding the present motions.

### B. Motions to Dismiss

As a threshold matter, each defendant raises that the statutes of limitations have already run on McIntosh's claims. In California, claims stemming from written and oral contracts have four- and two-year statutes of limitations, respectively. Cal. Civ. P. Code §§ 337, 339. Statutory claims have a three-year statute of limitations. *Id.* § 338. The limitations period does not begin to accrue "until the party owning it is entitled to begin and prosecute an action thereon." *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035, 1040 (Cal. 1992). In the present case, the parties dispute when exactly that was. Defendants say McIntosh had claims she was entitled to bring as soon as she missed her first payment in August 2015, or at the latest when her servicer reached out to her to discuss alternatives to foreclosure—which the Declaration attached to the Notice of Default suggests was, at the latest, in March 2016. McIntosh contends the servicer never reached out to her, and thus the Declaration is false, and that in any case her causes of action did not become available until defendants foreclosed upon her home in August 2019. While the wrongful foreclosure claim may not have begun to accrue before that date, other claims—in particular those for breach of contract—as a matter of law began to run when the contracts were breached, which McIntosh herself alleges was well before 2019. She may be able to save these claims if she can

---

foreclosure. The FAC alleges this never happened. *See* FAC at 10 ("Plaintiff herein alleges the declaration as recorded and relied upon for the August 2019 foreclosure, contains false statements that Wells Fargo explored alternatives to foreclosure with Plaintiff when in fact, it did not."). For evidentiary purposes, notice shall be taken of the fact that the Declaration was filed, and that Wells Fargo swore McIntosh had been contacted, but not of the truth of the matter.

demonstrate delayed discovery. Nevertheless, at the motion to dismiss stage, her plausible factual allegation that she did not know about her claims before August 2019 must be taken as true. The FAC will thus not be dismissed on statute of limitations grounds, though it may be a barrier later.

U.S. Bank and Catamount also argue McIntosh's claims are barred by res judicata due to the adversary action in bankruptcy court. Res judicata, or claim preclusion, prohibits lawsuits on "any claims that were raised or could have been raised" in a prior action. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (emphasis added) (internal citation omitted). To trigger res judicata, the earlier suit must have (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 887 (9th Cir. 2000). McIntosh contends res judicata does not apply because the adversary action did not result in a "final judgment on the merits," as it was dismissed for lack of jurisdiction. That argument, however, is clearly belied by the judicially noticed documents, which evince that the adversary action was dismissed under Rule 12(b)(6). A dismissal under Rule 12(b)(1) or 12(b)(2) is jurisdictional. A dismissal under Rule 12(b)(6) for failure to state a claim is not. Thus, res judicata likely bars McIntosh's entire action against U.S. Bank and Catamount. Her claims will nevertheless be evaluated on their merits, against Wells Fargo and for completeness, but any amended complaint should address this issue.

### 1. *Breach of Contract*

To state a claim for breach of contract, a plaintiff must allege, the "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008). McIntosh alleges two separate contracts were breached by Wells Fargo and U.S. Bank: first the Settlement Agreement, then the Deed of Trust.[3]

As to the Settlement Agreement, McIntosh alleges defendants breached by failing to offer

---

[3] U.S. Bank notes it was not a party to either contract, and thus cannot be held liable for breaching them. Because the claims fail for other reasons, this argument is not discussed in full.

United States District Court
Northern District of California

her a third modification in 2015 when she begun to miss her payments. McIntosh alleges she was a Class B member and thus entitled to a modification. However, it is clear from the Agreement that McIntosh was neither a Class B member, nor was she entitled to another modification. At the time of the Agreement, she had already obtained a modification which converted her Pick-a-Payment loan. Therefore, she no longer had the offending loan and was a Class A member, ineligible for modifications under the express terms of the settlement. *See* Settlement Agreement at 46 ("Settlement Class Members who have received earlier loan modifications not pursuant to this Agreement will not be eligible to be considered for new loan modifications under this Agreement."). Nevertheless, she *did* receive a further modification in 2011, belying her allegation that Wells Fargo failed to evaluate continually her loan for potential modifications. Furthermore, the Settlement Agreement only promises Wells Fargo will continually *evaluate* Class B members for modifications; they are not guaranteed. McIntosh has thus not plausibly alleged that defendants breached the Settlement Agreement.

McIntosh's argument that the 2011 modification "transmuted" her from a Class A to a Class B member is unavailing. She cites no legal basis for this contention. The Settlement Agreement, by its very terms, only applies to loans obtained between 2003 and 2008, and thus, to the extent that McIntosh is attempting to characterize the 2011 modification as a new loan subject to the Agreement, that argument fails. Nor do the terms of the Agreement say anything about "transmutation" or contemplate that class members can transition among classes. To the contrary, the Agreement appears to fix class status at the time of the settlement. It refers several times to Class B members who default separately from Class C members, but the very distinction between Class B and C was whether the class member was in default at the time of the settlement. Thus, neither the Agreement nor any law provides a basis for this "transmutation" theory.

As to the Deed of Trust, the only provision of that contract which McIntosh alleges defendants violated is the choice of law provision, which states the document will be governed by state and federal law. This, says McIntosh, means the contract is governed in part by the HBOR, several provisions of which, as discussed below, McIntosh alleges defendants violated. However,

McIntosh cites no authority for this novel legal theory, nor does any authority appear to exist. Without an allegation that defendants violated any other specific provision of the Deed of Trust, this claim is not plausible. Thus, both breach of contract claims must be dismissed.

### 2. Promissory Estoppel

In the FAC, each breach of contract claim is alternatively stated as a promissory estoppel claim, albeit in a conclusory fashion. Wells Fargo and U.S. Bank each explain in detail, in their respective motions to dismiss, why McIntosh has failed to state a promissory estoppel claim. McIntosh fails to address their arguments in her opposition. "Courts have found that a failure to oppose an argument serves as a concession." *Lou v. JP Morgan Chase Bank N.A.*, No. 17-cv-04157, 2018 WL 1070598, at *2 (N.D. Cal. Feb. 26, 2018) (collecting cases). The promissory estoppel claims are thus waived and must be dismissed.

### 3. Good Faith and Fair Dealing

Under California law, every contract implies by law a covenant of good faith and fair dealing. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). The covenant requires the contracting parties to "do everything the contract presupposes [they] will do to accomplish [the contract's] purpose." *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (Cal. Ct. App. 2004) (internal citations and quotations omitted). At the same time, the covenant "is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Id.* at 1094 (emphasis in original) (internal citations and quotations omitted). That is, the covenant of good faith and fair dealing "cannot substantively *alter* [the] terms [of the contract]" or "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. *Guz*, 24 Cal. 4th at 327 (emphasis in original). The elements of a cause of action for breach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract [or was excused from nonperformance]; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the

1    defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.,* 732 F. Supp. 2d 952, 968 (N.D.

2    Cal. 2010) (internal citations omitted).

3              In the present case, McIntosh has failed to allege that she fulfilled her obligations under the

4    contract or was excused from doing so. Put differently, because her breach of contract claims are

5    not plausible, as discussed above, she cannot allege an attendant breach of the covenant of good

6    faith and fair dealing. The covenant does not "impose substantive duties" beyond the "specific

7    terms" of the contracts. *Guz*, 24 Cal. 4th at 327. McIntosh has not plausibly alleged defendants did

8    not fulfill their obligations under either the Settlement Agreement or the Deed of Trust, and the

9    covenant does not itself create any additional obligations. Thus, regardless of whether the other

10   elements of a good faith and fair dealing claim are met—defendants have submitted several

11   arguments as to why they are not, including again that U.S. Bank was not a party to any of the

12   underlying contracts—McIntosh has not alleged plausibly this claim. The motion to dismiss the

13   claim for breach of good faith and fair dealing is granted.

14        ***4.  Homeowner's Bill of Rights***

15             Under the HBOR, a mortgage servicer may not record a notice of default until the servicer

16   reaches out to the borrower "to assess the borrower's financial situation and explore options for

17   the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5. The servicer must then wait 30 days

18   after the initial contact is made and record a declaration of compliance before filing a notice of

19   default. *Id.* § 2923.55. "A declaration recorded pursuant to Section 2923.5 or pursuant to Section

20   2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee

21   recorded by or on behalf of a mortgage servicer in connection with a foreclosure…shall be

22   accurate and complete and supported by competent and reliable evidence." *Id.* § 2924.17. A

23   private right of action exists for "material" violations of these provisions. *See id.* § 2924.12.

24             McIntosh alleges defendants violated the HBOR by failing to reach out to her about

25   alternatives to foreclosure and then recording a Declaration alongside the Notice of Default which

26   "contain[ed] false statements that Wells Fargo explored alternatives to foreclosure with Plaintiff

27   when in fact, it did not." FAC at 10. McIntosh is correct that, in the absence of a sworn

28

United States District Court
Northern District of California

Declaration, whether an entity complied with the requirements of the HBOR is a question of fact which cannot be resolved at the pleading stage. *Skov v. U.S. Bank Nat'l Assn.*, 207 Cal. App. 4th 690, 696 (Cal. Ct. App. 2012). However, when a representative for the entity swears in a declaration it has complied with the requirements of sections 2923.5 and  2923.55, courts have held "conclusory assertions" of noncompliance are not plausible. *See, e.g.*, *Kamp v. Aurora Loan Servs.*, No. 09-cv-00844, 2009 WL 3177636, at *2 (C.D. Cal. Oct. 1, 2009); *Juarez v. Wells Fargo Bank, N.A.*, No. 09-cv-03104, 2009 WL 3806325, at *2 (C.D. Cal. Nov. 11, 2009). Furthermore, McIntosh's request to amend her complaint and allege additional HBOR violations via her responses to the present motions is improper, because her responses are not pleadings and thus cannot serve as such.[4] The FAC alleges a violation of only § 2924.17, and that allegation is implausible in light of the Declaration. This claim must therefore be dismissed.

### 5. *Wrongful Foreclosure*

To plead wrongful foreclosure, a plaintiff must demonstrate "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Sciarratta v. U.S. Bank Nat'l Assn.*, 247 Cal. App. 4th 552, 562 (Cal. Ct. App. 2016) (internal citation omitted). Here, the parties agree McIntosh has not tendered or even offered to tender her debt. However, McIntosh argues she should be excused because it would be inequitable to require her to tender when defendants have committed the wrongdoings she alleged. Leaving aside whether defendants actually committed any wrongdoing—she has not plausibly alleged so, as discussed above—there is no legal basis for her equitable excuse theory.

---

[4] McIntosh's responses also attempt to amend the FAC by alleging U.S. Bank failed to notify her of its acquisition of her loan in 2018 in violation of 15 U.S.C. § 1641(g). This allegation is clearly belied by the Assignment of Deed of Trust recorded with the Napa County Recorder, of which judicial notice is proper as discussed above.

The case she cites in support of her proposition, *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89 (Cal. Ct. App. 2011), held tender was excused "because the underlying loans and deeds of trust were unconscionable, illegal, and void at the inception," *id.* at 107. McIntosh does not allege the underlying loans were void at their inception. Rather, she claims defendants breached contracts and violated the HBOR by exercising their power of sale instead of offering her a modification, and thus that the contract is voidable. *See Sciarratta*, 247 Cal. App. 4th at 563 ("A void contract is without legal effect. A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.'" (internal citation omitted)). Tender is not excused when a foreclosure sale is allegedly voidable, as opposed to void. *Id.* at 565 n.10. Thus, for this reason at least, the wrongful foreclosure claim must be dismissed.[5]

### 6. *Cancellation of Instruments*

"A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be…canceled." Cal. Civ. Code § 3142. To state a cause of action under this provision, a plaintiff must plausibly allege the instrument was void or voidable against her. *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 818 (Cal. Ct. App. 2016). As discussed above, McIntosh has failed to allege any wrongful conduct by defendants. Thus, this derivative claim cannot stand. Furthermore, because McIntosh requests an equitable exception, she alleges the instrument was voidable, not void. Thus, she must also allege she has tendered, *see Py v. Pleitner*, 70 Cal. App. 2d 576, 582 (Cal. Ct. App. 1945) ("[A] tender of the indebtedness is a prerequisite to a judgment canceling a sale under a deed of trust.")—which she does not. This cause of action must therefore also be dismissed.

### 7. *Quiet Title*

_____

[5] Wells Fargo alleges that because it was uninvolved in the foreclosure, this claim and the next one are implausibly asserted against it. As the claims fail for substantive reasons, this argument is not discussed in full.

United States District Court
Northern District of California

1    Quiet title is not a standalone cause of action. Rather, it is a remedy for a plaintiff who has

2    demonstrated a "substantive right to relief." *Leeper v. Beltrami*, 53 Cal. 2d 195, 215 (Cal. 1959).

3    Here, McIntosh has not demonstrated such a right, as each of her claims is implausible. This claim

4    must therefore be dismissed both because quiet title is improperly pled as a separate cause of

5    action, and because McIntosh has not plausibly alleged an antecedent basis for such relief.

6        Even if McIntosh had plausibly pled an antecedent claim, and properly requested quiet title

7    as a form of relief, the remedy would not be available to her because the foreclosure sale has

8    already taken place. The case cited extensively by McIntosh herself in support of her quiet title

9    claim confirms: "upon delivery of the trustee/s deed to a third party purchaser, the recitals in the

10   deed create a conclusive presumption in favor of the purchaser and the sale may not be set aside in

11   the absence of fraud." *Bank of Am. v. La Jolla Grp. II*, 129 Cal. App. 4th 706, 714 (Cal. Ct. App.

12   2005), *as modified* (June 15, 2005) (internal alteration and citation omitted). McIntosh does not

13   allege any fraud. In fact, with respect to Catamount in particular—the only party against whom

14   this claim is asserted—McIntosh specifically clarifies in her opposition that she is alleging no

15   wrongdoing. Catamount is simply joined in this action, says McIntosh, as a necessary party under

16   Rule 19. Thus, even if McIntosh were to prevail on the merits of her claim, a quiet title remedy

17   would not be available to her. This cause of action must therefore also be dismissed.

18                                    **V.  CONCLUSION**

19       For the reasons set forth above, each cause of action must be dismissed. However,

20   McIntosh will be given leave to amend to the extent she can cure the defects in the FAC as

21   described above. Any amended complaint must be filed within 21 days of the date of this order.

22

23   **IT IS SO ORDERED**.

24

25   Dated: June 11, 2020

26                                                            _____

27                                          RICHARD SEEBORG
                                           United States District Judge

28

*United States District Court*
*Northern District of California*